IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JASON BRYAN MARTIN, | CV 17-00060-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| LOGAN BRYCE,[1] | |
| Defendant. | |

Plaintiff Jason Martin filed a Complaint alleging former Deputy United States Marshal Logan Bryce utilized excessive force during the course of Mr. Martin's arrest on February 29, 2016.  The Complaint fails to state a federal claim upon which relief may be granted and should be dismissed.

## I.  STATEMENT OF THE CASE

### A.      Parties

Mr. Martin is a state prisoner proceeding in forma pauperis and without

---

[1]Mr. Martin filed a notice with the Court asking that the case style be changed from *Martin v. Former U.S. Marshal Logan Brice* to *Jason Bryan Martin v. Logan Brice*.  The Court notes that the case style on Martin's Complaint (Doc. 2) is *Jason Bryan Martin v. Former U.S. Marshal, Logan Brice*.  (Doc. 2 at 1.)  The Court utilized the case style created by Mr. Martin when he filed the Complaint in its July 17, 2017 Orders (Docs. 5,6).  The Court however, also takes judicial notice that the U.S. Marshal involved in this incident was former Deputy U.S. Marshal Logan Bryce.  The case style is amended to reflect Mr. Martin's request and the proper name of Marshal Bryce.

counsel.  He is incarcerated at Crossroads Correctional Center.  The sole

Defendant is former Deputy United States Marshal Logan Byrce.  (Complaint,

Doc. 2 at 4.)

### B. Allegations

Mr. Martin was convicted of federal charges in 2013.  (*United States v.*

*Martin*, Criminal Action No. 4:12cr61-GF-BMM.)[2]  His supervised release was

revoked on August 31, 2015 and he was sentenced to seven months custody

followed by 29 months supervised released.  One of the supervised conditions of

that release was that Mr. Martin was required to reside in a Residential Reentry

Center under contract to the United States Bureau of Prisons for 180 days.  (*Id. at*

*Doc. 45–Petition for Warrant for Offender Under Supervision*.)

On February 29, 2016, Mr. Martin was removed from the Great Falls

Transition Center for "aggressive actions as a risk to staff and other residents."

(*Id.* at 2.)  Accordingly, the United States Probation Office filed a petition for a

warrant for an offender under supervision and the undersigned signed an arrest

warrant for Mr. Martin.  (*U.S. v. Martin*, 4:12cr61-GF-BMM, Docs. 45, 46.)

---

[2]The Court may take judicial notice of its own records and the records of other courts. *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also* Fed.R.Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

On February 29, 2016, United States Marshal Logan Bryce and United States Probation Officer Kevin Heffernan went to the Great Falls Transition Center to arrest Mr. Martin.  Mr. Martin testified under oath at the final revocation hearing on March 9, 2016 that when a staff member at the transition center called him over to talk to him he knew the Marshals were there, panicked and ran downstairs to a bathroom.  When he walked out of the bathroom, he was arrested by Marshal Bryce.  When the officers were escorting Mr. Martin outside, Mr. Martin admits that he jerked away from Marshal Bryce "because I was upset." (*U.S. v. Martin*, 4:12cr61-GF-BMM, Doc. 63 at 36, 63.)

In his Complaint, Mr. Martin alleges he was handcuffed with his hands behind his back while being escorted by Marshal Bryce.  As they approached the transport vehicle, Mr. Martin pulled his right arm from what he alleges was "Defendant Brice's excessive grib [sic]."  He contends that Marshal Bryce was holding him with greater force than necessary.  Mr. Martin alleges that Marshal Bryce "became instantly enraged and immediately reached up and placed both of his hands on Plaintiff Martin's neck and began to choke him."  After about three seconds, Mr. Martin noticed that Marshal Bryce would not let go or loosen his hold.  Mr. Martin began to panic because he could not breathe and his hands were cuffed behind his back and he began to squirm violently attempting to free

3

himself.  Because he was still unable to breathe, he attempted to move his head

back and forth in an attempt to break loose of Marshal Bryce's choke.  This made

Marshal Bryce even more angry and he squeezed harder for a few more seconds.

Mr. Martin alleges the total choke time was approximately 15 seconds.

## II.  INITIAL SCREENING

Mr. Martin is a prisoner proceeding in forma pauperis so the Court must

review his Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and

1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis

and/or by a prisoner against a governmental defendant before it is served if it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in

fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it

was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d

1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief

may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to

relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation

omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint

4

"that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  This rule requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Thus, a complaint's allegations must cross "the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.  There is a two-step procedure to determine whether a complaint's allegations cross that line.  *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662.  First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679, 680.  Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim.  *Id.* at 679, 681.  A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability.  *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief.  *Iqbal*, 556 U.S. at 679.  A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at

678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (*citing* Fed.R.Civ.P.8(a)(2)). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## III.  ANALYSIS

The Court will liberally construe Mr. Martin's constitutional claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).  *Bivens* is the "federal analogue" to 42 U.S.C. § 1983.  *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006).  In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers for an alleged violation of a citizen's rights under the Fourth Amendment.

*Bivens*, 403 U.S. at 397.

The Fourth Amendment requires law enforcement officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). To determine the objective reasonableness of a particular use of force, courts engage in a three-step inquiry. *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011); *Graham v. Connor*, 490 U.S. 386, 396 (1989). First, the court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.' " *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (*quoting Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "[E]ven where some force is justified, the amount actually used may be excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Second, the court must evaluate the government's interest in the use of force by analyzing three factors: "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Finally, a court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller*, 340 F.3d at 964. While police officers are not required to employ the

"least intrusive degree of force possible," the amount of "force which [i]s applied must be balanced against the need for that force." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) and *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001).

### A. The Type and Amount of Force Used

In assessing the quantum of force used to arrest Mr. Martin, the Court considers "the type and amount of force inflicted." *Deorle*, 272 F.3d at 1279 (internal quotation and citation omitted); *see also Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017). Taking the facts as presented by Mr. Martin as true, Marshal Bryce held his hands to Mr. Martin's throat choking him for 15 seconds during which time Mr. Martin squirmed violently and moved his head back and forth. The force employed by Marshal Bryce was more than nonphysical commands, but substantially less than intermediate force. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) ("intermediate force is the most severe force authorized short of deadly force.") The Ninth Circuit has determined that blows from a baton, strikes from a Taser, and police dog bite and holds resulting in severe injury are examples of intermediate force and represent significant intrusions. *See Young v. County. of Los Angeles*, 655 F.3d 1156, 1161–62 (9th Cir. 2011); *Bryan v. MacPherson*, 630 F.3d 805, 810, 826 (9th Cir. 2010); *Chew v.*

*Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

While "the severity of the injuries may support an inference that the force used was [a] substantial" intrusion, no such inference can be made here. *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002).  Mr. Martin describes his injuries as consisting mental health issues including dislike and distrust of law enforcement officials, increased panic and anxiety, and belief that there is no justice for all. (Complaint, Doc. 2 at 7.)  While he states he was unable to breathe for approximately 15 seconds, his injuries were de minimis.  *See Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) (holding that a suspect suffering from a broken finger and discomfort from a chemical solution running into her eyes were minor injuries.)  The Court finds the amount and type of force used by Marshal Bryce was a minimal, but not an insignificant, intrusion on Mr. Martin's Fourth Amendment rights.

Interpreting the facts in favor of Mr. Martin, the Court finds this step of the inquiry weighs in favor of Marshal Bryce.  The amount of force employed was minimal, lasting a short period of time, resulting in no physical injury, and did not result in a serious intrusion on Mr. Martin's Fourth Amendment interests.

**B.  Interest in the Use of Force**

The Court considers the three *Graham* factors to evaluate the government's

interest in the use of force. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011); *Graham*, 490 U.S. at 396.

The first *Graham* factor, the severity of the crime at issue, weighs in favor of Marshal Bryce. Marshal Bryce had gone to the Great Falls Transition Center to arrest Mr. Martin on warrant because he was being removed from the Transition Center for "aggressive actions as a risk to staff and other residents." (*U.S. v. Martin*, 4:12cr61-GF-BMM, Doc. 45 at 2.) Mr. Martin was being arrested for violating conditions of supervision but when he reacted by running away and then jerked away from Marshal Bryce, he was resisting the officers and the circumstances justified the use of some degree of force. *See Wise v. Kootenai Cnty.*, 2013 WL 1789716, at *7 (D. Idaho Apr. 26, 2013)(situation escalated when a plaintiff stopped for a minor speeding infraction refused to comply with officer's commands and was openly hostile).

"The second *Graham* factor, 'whether the suspect pose[d] an immediate threat to the safety of the officers or others,' is 'the most important single element of the three specified factors.' " *Lowry*, 858 F.3d at 1258 (*quoting Chew*, 27 F.3d at 1441). Mr. Martin admitted in his revocation hearing that he ran downstairs away from the officers when he found out they were at the transition center. He also admits that he jerked away when Marshal Bryce was holding him during the

escort to the transport vehicle.  Although in his Complaint, Mr. Martin raises

allegations that Marshal Bryce was holding him too tightly, in his revocation

hearing he testified under oath that he jerked his arm away from Marshal Bryce

because he was upset.  Given that he had already run from the officers and admits

that he jerked his arm away from Marshal Bryce, this factor also weighs in favor

of Marshal Bryce.

The third *Graham* factor requires the Court to evaluate whether the plaintiff

actively resisted arrest or attempted to evade arrest by flight.  Mr. Martin had

initially run from the officers, he jerked away from Marshal Bryce while being

escorted to the transport vehicle, and he continued to resist by "violently"

squirming and attempting to move his head away during the choke-hold.  "'[T]he

level of force an individual's resistance will support is dependent on the factual

circumstances underlying that resistance.' "  *Lowry*, 858 F.3d at 1258.  This factor

weighs in favor of Marshal Bryce.

Based on the foregoing, the Court finds there was an important government

interest at stake in light of *Graham* factors.  This second step of the excessive

force inquiry weighs in favor of Marshal Bryce.

## C.  The Balance of Interests

The third and "final step of the excessive force inquiry requires us to

balance the gravity of the intrusion on [Mr. Martin's] Fourth Amendment rights against Marshal Bryce's need for that intrusion." *Lowry*, 858 F.3d at 1260 (citing Glenn, 673 F.3d at 871). As discussed above, Marshal Bryce intruded upon Mr. Martin's liberty when he applied force to obtain Mr. Martin's compliance, however, the intrusion was minimal. There was an important government interest in Marshal Bryce subduing Mr. Martin in order to complete the arrest of Mr. Martin. Mr. Martin initially ran from the officers and jerked away from Marshal Bryce during the escort to the transport vehicle. Marshal Bryce employed physical compliance techniques to subdue Mr. Martin. Marshal Bryce only applied the force for 15 seconds and did not employ any additional force.

Taking Mr. Martin's allegations as true, the Court finds that he has failed to plausibly state a claim for excessive use of force.

## IV. CONCLUSION

The Court has considered whether Mr. Martin's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Mr. Martin's allegations fail to state a plausible claim upon which relief may be granted. These are not defects which could be cured by further amendment. The case should be dismissed.

12

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  This matter should be DISMISSED for failure to state a federal claim.

2.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.  The record makes plain the Complaint lacks arguable substance in law or fact.

4.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Martin failed to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Martin may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure

---

[3]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C)

13

to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 10th day of January, 2018.


*/s/ John Johnston*
John Johnston
United States Magistrate Judge

---

(mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Martin is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

14